SHOOK, HARDY & BACON L.L.P.
Gary Miller (Appearance *Pro Hac Vice*)
gmiller@shb.com
111 S. Wacker Drive, 51st Floor
Chicago, Illinois 60606
Telephone:  312-704-7700
Facsimile:   312-558-1195

Jesse J. Camacho (Appearance *Pro Hac Vice*)
jcamacho@shb.com
Mary J. Peal (Appearance *Pro Hac Vice*)
mpeal@shb.com
Ryan D. Dykal (Appearance *Pro Hac Vice*)
rdykal@shb.com
Daniel M. Staren (Appearance *Pro Hac Vice*)
dstaren@shb.com
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:  816-474-6550
Facsimile:   816-421-5547

Mayela C. Montenegro (SBN: 304471)
mmontenegro@shb.com
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:   949-475-1500
Facsimile:    949-475-0016

Attorneys for Defendant
TELESIGN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| TWILIO INC., | Case No. 5:16-cv-6925-LHK |
| Plaintiff, | Judge: Hon. Mag. Judge Susan van Keulen |
| vs. | **TELESIGN'S MOTION TO COMPEL AMENDED DAMAGES CONTENTIONS FROM TWILIO** |
| TELESIGN CORPORATION, | |
| Defendant. | Date:    November 14, 2017<br>Time:    10:00am<br>Judge:  Hon. Mag. Judge Susan Van Keulen<br>Place:   Courtroom 6, 4th floor |

**PLEASE TAKE NOTICE THAT** on November 14, 2017, or as soon as counsel may be heard, in Courtroom 6 before the Honorable Susan van Keulen, in the United States District Courthouse, 280 South 1st Street, San Jose, California 95113, Defendant TeleSign will, and hereby does, move the Court for an order granting TeleSign's motion to compel. This motion is based on this Notice of Motion, the following Points and Authorities, the Declaration of Daniel Staren in Support of Defendant's Motion to Compel, filed concurrently herewith, and such other materials or oral argument as the Court may permit.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rule Civil Procedure 37, TeleSign requests an order GRANTING TeleSign's Motion to Compel Twilio to amend its damages contentions to provide the information required by Patent Local Rule 3-8.

| | |
|---|---|
| Dated: September 21, 2017 | SHOOK, HARDY & BACON L.L.P. |

By:  */s/ Daniel M. Staren*

SHOOK, HARDY & BACON L.L.P.

Gary Miller  (Appearance *Pro Hac Vice*)
gmiller@shb.com
111 S. Wacker Drive, 51st Floor
Chicago, Illinois  60606
Telephone:     312-704-7700
Facsimile:      312-558-1195

Jesse J. Camacho (Appearance *Pro Hac Vice*)
jcamacho@shb.com
Mary J. Peal (Appearance *Pro Hac Vice*)
mpeal@shb.com
Ryan D. Dykal (Appearance *Pro Hac Vice*)
rdykal@shb.com
Daniel M. Staren (Appearance *Pro Hac Vice*)
dstaren@shb.com
2555 Grand Boulevard
Kansas City, Missouri  64108
Telephone:     816-474-6550
Facsimile:      816-421-5547

Mayela C. Montenegro (SBN: 304471)
mmontenegro@shb.com
5 Park Plaza, Suite 1600
Irvine, California  92614
Telephone:     949-475-1500
Facsimile:      949-475-0016

Attorneys for Defendant
TELESIGN CORPORATION

| **Exhibits to the Staren Declaration in Support of TeleSign's Motion to Compel** ||
|---|---|
| Exhibit A | Email from Schiller to Peal, dated Aug. 22, 2017 |
| Exhibit B | Email from Peal to Schiller, dated June 30, 2017 |
| Exhibit C | Email from Schiller to Peal, dated June 30, 2017 |
| Exhibit D | Email from Schiller to Peal, dated July 26, 2017 |
| Exhibit E | Email from Peal to Schiller, dated July 27, 2017 |
| Exhibit F | Letter from Peal to Stacy, dated August 8, 2017 |

**POINTS AND AUTHORITIES**

I.  OVERVIEW

Patent Local Rule 3-8 requires patent plaintiffs to identify each category of damages sought, "as well as its theories of recovery, factual support for those theories, and computations of damages within each category." Pat. L. R. 3-8(a).  Twilio did not comply, and TeleSign has no idea what amount of damages or by what theory Twilio intends to compute its damages.

Instead of providing computations of damages, Twilio's contentions merely (1) waive the right to seek lost profits, price erosion, and convoyed or collateral sales damages; (2) complain about a lack of discovery while reserving Twilio's right to supplement; and (3) list the *Georgia-Pacific* factors and discuss their potential applicability to a reasonable royalty. Notably missing are any actual computations of damages—or indeed any damages numbers at all. There is no proposed royalty rate, nor any application of the royalty rate to TeleSign's sales. There is likewise no lump-sum request. There is also no disclosure of underlying methodology, such as a date of hypothetical negotiation, date of first infringement, an apportionment (particularly in light of TeleSign's non-accused products, which Twilio contends are relevant), and assessment of comparable licenses.

TeleSign asked Twilio to supplement to provide this missing information, but Twilio refused, stating simply that its contentions are sufficient. Twilio did not ask for any additional information from TeleSign, and warned TeleSign that "[a]ny substantial delay in the filing of [TeleSign's] motion will be a waiver of the issue." Ex. A (Email from Schiller to Peal, dated August 22, 2017).

II.  FACTUAL BACKGROUND

On June 20, 2017, Twilio purported to serve its damages contentions pursuant to Patent Local Rule 3-8. *See* ECF No. 102-4, Ex. M (Twilio's Damages Contentions) (filed under seal). Twilio expressly disclaimed lost profits and price erosion damages, and declined to specify any convoyed or collateral sales damages.[1] *Id*. at p. 1. Twilio stated that it seeks (1) a reasonable royalty for past infringement, and (2) an injunction for future infringement, or, in the alternative, a reasonable royalty for ongoing infringement. *Id*. at pp. 2–4, 6. While Twilio did not specify the

---

[1]  Twilio contends only that TeleSign's Score and Phone ID products may be relevant to *Georgia-Pacific* factor No. 6.

amount of the reasonable royalty, it referenced various data points that it contends "may be" relevant, such as TeleSign's non-accused products and non-patented features,[2] the difference between SOAP and REST interfaces,[3] per-customer sales from 2005 to the present,[4] and an agreement between Twilio and KDDI.[5] None of these factors are quantified.

On June 30, 2017, TeleSign inquired why the KDDI agreement had not been produced three months earlier under Patent Local Rule 3-2(g) and (h) (requiring the production of "all agreements that the party asserting infringement contends are comparable to a license that would result from a hypothetical reasonable royalty negotiation" and "all agreements that otherwise may be used to support the party asserting infringement's damages case."). Ex. B (Email from Peal to Schiller, dated June 30, 2017). Twilio responded that it could not produce the agreement due to confidentiality concerns.[6] Exs. C (Email from Schiller to Peal, dated June 30, 2017) and D (Email from Schiller to Peal, dated July 26, 2017). TeleSign informed Twilio that the agreement must be produced. Ex. E (Email from Peal to Schiller, dated July 27, 2017). After conferring with counsel for KDDI, Twilio eventually produced the KDDI agreement on August 23, 2017. Staren Decl., Para. 3.

On August 8, 2017, TeleSign wrote to Twilio identifying various deficiencies in its damages contentions, including its failure to "identify any rate or provide computations." Ex. F (Letter from Peal to Stacy, dated August 8, 2017). When the parties conferred on August 17, 2017, Twilio stated that it considered its damages contentions to be sufficient, and warned that if TeleSign disagreed, it must move to compel or waive its right to do so. Ex. A (Email from Schiller to Peal, dated August 22, 2017).

---

[2] *Id.* at pp. 12–13, 18, 24, 28–29, 35, and 37–41.

[3] *Id.* at pp. 15–17, 21–23, 28, 30–32, 36, and 40–41.

[4] *Id.* at pp. 17, 23, 26, and 32.

[5] *Id.* at pp. 8:5-14 and 10:1-10 (listing the KDDI agreement as evidence of "royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty" and "licensor's established policy" relating to licensing activities).

[6] An apparent violation of Patent Local Rule 2-2, which states that "discovery cannot be withheld on the basis of confidentiality absent Court order."

## III. LEGAL STANDARDS

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Geovector Corp. v. Samsung Elecs. Co.*, Case No. 16-cv-02463-WHO, 2017 U.S. Dist. LEXIS 3626, *7-*8 (N.D. Cal. Jan. 9, 2017) (alteration in original) (citation omitted).

Patent Local Rule 3-8 expressly requires patentees to disclose their theories of damages and the computations of those damages:

> Not later than 50 days after service of the Invalidity Contentions, each party asserting infringement shall:
>
> > (a) Identify each of the category(-ies) of damages it is seeking for the asserted infringement, as well as its theories of recovery, factual support for those theories, and computations of damages within each category, including:
> >
> > > 1. lost profits;
> > >
> > > 2. price erosion;
> > >
> > > 3. convoyed or collateral sales;
> > >
> > > 4. reasonable royalty; and
> > >
> > > 5. any other form of damages.
> >
> > (b) To the extent a party contends it is unable to provide a fulsome response to the disclosures required by this rule, it shall identify the information it requires.

Pat. L. R. 3-8.

A patent plaintiff may not "evade the duty to lay out its damages contentions at the outset of the case merely because it hopes it can frame more handsome contentions after discovery." *Brandywine Communs. Techs., LLC v. Cisco Sys.*, 2012 U.S. Dist. LEXIS 162165, *7 (N.D. Cal. Nov. 13, 2012). "Only to the extent that, and only for so long as, the patent plaintiff is unable, despite its Rule 11 obligations, to fully satisfy the Rule 26(a) disclosure requirement, a patent plaintiff is temporarily excused from disclosing a shortfall in information (but it must disclose the rest at the outset)." *Id*.

Damages contentions must provide facts and figures. "[S]imply saying 'you owe me' is not enough." *Johnstech Int'l Corp. v. Jf Microtechnology SDN BHD*, 2016 U.S. Dist. LEXIS 104380, *4 (N.D. Cal. Aug. 8, 2016) (quoting *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003)). Generalized statements about "[m]onies to compensate" for infringement are insufficient. *See id.*

IV.  **ARGUMENT**

Twilio's damages contentions are not sufficient. Twilio's requested reasonable royalty damages are nothing more than a listing of the *Georgia-Pacific* factors with some data points that "may be" relevant. *See* ECF No. 102-4, Ex. M (Twilio's Damages Contentions) (filed under seal) at pp. 13:10-14 ("Twilio contends that information relating to this new service . . . may be relevant to the analysis under this factor.") and 19:3-4 ("[D]ocuments relating to Twilio's own profitability and pricing relating to its products that practice the claims may be relevant under this analysis."). This generalized "you owe me" methodology is plainly inadequate. *See Johnstech*, 2016 U.S. Dist. LEXIS 104380 at *4 ("[S]imply saying 'you owe me' is not enough.").

In addition to a lack of computation, Twilio's reasonable royalty request lacks underlying factual predicates. For instance, Twilio repeatedly acknowledges the relevance of the hypothetical negotiation, see ECF No. 102-4, Ex. M (Twilio's Damages Contentions) (filed under seal), at pp. 8–10, 13–14, 39–41, but fails to specify the date of that hypothetical negotiation, the date of first infringement, and how Twilio contends the parties would behave in this negotiation (i.e., the floor and ceiling negotiating positions of the parties, and the basis for those numbers). And while Twilio makes references to the KDDI agreement, TeleSign's sales, TeleSign's "incremental margins," and TeleSign's "non-accused products," it fails to tie any of these to actual calculations. For instance, it seems likely that Twilio will base its royalty on the amount it is being paid by KDDI (apportioned for Twilio's copyrights, trademarks, and software value), but at this point TeleSign is left to guess. Likewise, Twilio acknowledges that it must weigh TeleSign's incremental margins for use of

Twilio's patented technology[7]—as well as non-patented features and non-accused products[8]—but again, TeleSign is in the dark as to how Twilio views this apportionment.

Any attempt by Twilio to resort to Patent Local Rule 3-8(b) would be meritless. After being informed of its deficiencies, Twilio did not point to a lack of information as a basis for its refusal to supplement. Nor did it request additional information. Instead, it contended that its contentions are already sufficient. Ex. A (Email from Schiller to Peal, dated August 22, 2017) ("[A]s you recall, Twilio stated that its damages contentions are sufficient."). Indeed, TeleSign has produced information required for damages, including financial and sales information.

Twilio appears to want to hide the amount of damages it seeks, perhaps to stall settlement, or perhaps in the hope to "frame more handsome contentions after discovery." *Brandywine*, 2012 U.S. Dist. LEXIS 162165 at *7. In either case, Twilio's contentions are improper. If there are to be meaningful settlement discussions, Twilio should make its demand clear. This is particularly important given the Court-ordered mediation deadlines.

## V.   CONCLUSION

Twilio's damages contentions fail to provide damages numbers, or the computations underlying those numbers. Twilio should be compelled to supplement its damages contentions to specify (1) the quantified amount of damages Twilio seeks; and (2) a clear articulation of its theory supporting that amount, including the date of hypothetical negotiation, the date of first infringement, the proposed royalty rate, and the relevance of the data points Twilio identified as potentially relevant (e.g., apportionment for unpatented technology such as SOAP, the impact of TeleSign's per-customer sales and incremental margins, and the KDDI agreement).

---

[7]  *See* ECF No. 102-4, Ex. M (Twilio's Damages Contentions) (filed under seal), at pp. 14:3-8, 17:14-18, 23:16-20, 25:11-14, 32:20-24, 36:3-7, and 40:3-7.

[8]  *Id.* at p. 12:11-24.

| | | |
|---|---|---|
| 1 | Dated: September 21, 2017 | SHOOK, HARDY & BACON L.L.P. |

By:  */s/ Daniel M. Staren*

Gary Miller  (Appearance *Pro Hac Vice*)
gmiller@shb.com
111 S. Wacker Drive, 51st Floor
Chicago, Illinois  60606
Telephone:    312-704-7700
Facsimile:     312-558-1195

Jesse J. Camacho (Appearance *Pro Hac Vice*)
jcamacho@shb.com
Mary J. Peal (Appearance *Pro Hac Vice*)
mpeal@shb.com
Ryan D. Dykal (Appearance *Pro Hac Vice*)
rdykal@shb.com
Daniel M. Staren (Appearance *Pro Hac Vice*)
dstaren@shb.com
2555 Grand Boulevard
Kansas City, Missouri  64108
Telephone:    816-474-6550
Facsimile:     816-421-5547

Mayela C. Montenegro (SBN: 304471)
mmontenegro@shb.com
5 Park Plaza, Suite 1600
Irvine, California  92614
Telephone:    949-475-1500
Facsimile:     949-475-0016

Attorneys for Defendant
TELESIGN CORPORATION