

October 4, 2017

Mary J. Peal

Honorable Susan van Keulen
Courtroom 6, 4th Floor
280 South 1st Street, San Jose, CA 95113

2555 Grand Blvd.
Kansas City, Missouri 64108
**t** 816.474.6550
**dd** 816.559.2594
**f** 816.421.5547
mpeal@shb.com

Re:   *Twilio Inc. v. TeleSign Corp.*, Case No. 5:16-cv-06925

TeleSign provides this statement in response to Twilio's "letter brief," ECF No. 127. Judge van Keulen's standing order states: "If the parties are unable to reach a resolution they must file a joint statement of five pages or less in text-searchable PDF format that: (1) states the number of days remaining before the close of fact discovery and/or days until trial; (2) briefly describes each unresolved issue without argument; and (3) states, in a format that easily allows for comparison, each party's proposed compromise with respect to each unresolved issue." Twilio did not conform to these requirements, but TeleSign will—including only minimal information necessary to clarify the record.

Approximately 215 days remain before the May 7, 2018 fact-discovery-cut-off deadline.

**RFP Nos. 34, 35, 36:** There is no unresolved issue unless Twilio is trying to force TeleSign to admit that it "change[d] from SOAP to REST." But no such change or transition occurred; rather, TeleSign continued to offer SOAP interfaces. TeleSign also stated it would respond to a rephrased RFP that does not include the "change[d] from SOAP to REST" wording. Twilio refused. Further, depending on what "REST" means, there may have been no "change" at all. Even so, TeleSign has already produced documents relating to all of its interfaces pursuant to the Patent Local Rules and Twilio's RFP Nos. 21 and 22 (seeking source code and non-source code documents relating to the Accused Products). In short, TeleSign has already produced documents that would be responsive to a re-worded request.

**RFP Nos. 39 and 40:** The unresolved dispute is whether TeleSign must produce "All Documents that mention the Sheraton at Fisherman's Wharf from 2016 to present" and "All Documents that mention Tera Hudson and Twilio." Twilio has offered no compromise. TeleSign has explained that on their face, neither of these RFPs bear any relation to the issues in this case— i.e., patent infringement—and Twilio declined TeleSign's invitation to narrow their scope or explain their proportionality and relevance. TeleSign's compromise is to not withhold documents that would be responsive to other RFPs that it has agreed to respond to on the basis that they recite the named hotel and person.



**RFP No. 30:** The unresolved dispute is whether TeleSign must produce "[a]ll Documents relating to any Twilio account ever used by any past or current employee of TeleSign." Twilio's only purported compromise is to limit the scope of the request to that which is mandated by the Rules: documents in TeleSign's care, custody, or control. The dispute persists because Twilio would not explain how using a Twilio account—which are freely offered to the public—is relevant and proportional. Twilio offers products with no relation to this case. Regardless, in response to previous Twilio RFPs, TeleSign had agreed to produce documents relating to the relevant Twilio products (i.e., the products Twilio alleges practice the patents-in-suit), including any analysis of those products, and has informed Twilio of this fact. Ex. B, p. 8. Twilio has not explained how documents beyond those TeleSign has agreed to produce would be relevant or proportional.

**RFP No. 32:** The dispute is captured by TeleSign's objections, which accurately state that "discovery of the **entire**, potential acquisition is not justified or proportional, at least because the information requested is not tied to any patented features or even any products." Ex. A, p. 6 (emphasis added). Nevertheless, TeleSign told Twilio that it would investigate its positions regarding this RFP further, and accordingly served a supplemental response indicating it would search for valuations of the accused technologies or asserted patents and produce such valuations even if they were done in connection with the BICS acquisition. Ex. C, pp. 6-7. Twilio is also seeking all diligence documents of a highly confidential pre-closing transaction without explaining their need for them beyond what information Twilio has or what TeleSign has agreed to produce.

**Clarifications to the Background of this Dispute**

Twilio regretfully decided to file its "letter brief" unilaterally and without allowing TeleSign to review the version that was filed. TeleSign provides the following background for context:

(1) On September 22, Twilio requested a 10-day extension to respond to TeleSign's 5-page Motion to Compel Damages Contentions, explaining that this extension was necessary because of the overlap with the Claim Construction Hearing scheduled for October 5, 2017. TeleSign agreed to Twilio's requested extension based on this representation.

(2) One day after the Court granted Twilio's extension, Twilio sent TeleSign a 3-page, single-spaced "joint discovery letter" and demanded that TeleSign respond within 3 business days. When TeleSign stated that it, too, was preparing for the October 5, 2017 Claim Construction Hearing and would provide its portions



afterwards, Twilio stated that it would file unilaterally.

(3) To avoid Twilio's threatened unilateral filing, counsel for TeleSign informed Twilio that it had scheduled a call with the client on October 2 that would hopefully moot some or all of Twilio's discovery disputes. Twilio demanded a firm response by noon on October 4. Counsel for TeleSign explained that was likely impossible due to morning flights to San Jose to attend the Claim Construction Hearing. Twilio then unilaterally filed a substantially modified version of the letter brief it had previously circulated to TeleSign.

Page 3

Respectfully submitted,

 *s/ Mary Jane Peal*

Mary Jane Peal
Counsel for Defendant TeleSign