**BAKER BOTTS L.L.P.**
Wayne O. Stacy (SBN 314579)
wayne.stacy@bakerbotts.com
Sarah J. Guske (SBN 232467)
sarah.guske@bakerbotts.com
J.B. Schiller (SBN 298747)
jb.schiller@bakerbotts.com
101 California St., Suite 3600
San Francisco, CA 94111
Telephone: 415.291.6200
Facsimile: 415.291.6300

Michelle J. Eber (*pro hac vice*)
michelle.eber@bakerbotts.com
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
Telephone: 713.229.1223
Facsimile: 713.229.7923

Attorneys for Plaintiff
TWILIO INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE**

| | |
|---|---|
| TWILIO INC., <br><br> Plaintiff, <br><br> vs. <br><br> TELESIGN CORPORATION, <br><br> Defendant. | Case No. 5:16-CV-06925-LHK-SVK <br><br> **PLAINTIFF TWILIO INC.'S OPPOSITION TO TELESIGN'S MOTION TO COMPEL AMENDED DAMAGES CONTENTIONS** |

## TABLE OF CONTENTS

**Page**

I. ......... INTRODUCTION ................................................................................................................ 1

II. ......... FACTUAL BACKGROUND .............................................................................................. 2

III. ....... TWILIO'S DAMAGES CONTENTIONS COMPLY WITH THE LOCAL PATENT RULES ................................................................................................................................ 3

IV. ....... TELESIGN ATTEMPTS TO ENLARGE THE SCOPE OF THE LOCAL PATENT RULES ................................................................................................................................ 4

V. ........ CONCLUSION .................................................................................................................... 5

## I. INTRODUCTION

Twilio's damages contentions comply with the Local Patent Rules. They identify the category of past damages that it is seeking: a reasonable royalty. The contentions also make clear that Twilio is not seeking other forms of past damages. Twilio also set forth the theories of recovery and factual support for those theories that were available to Twilio at the time the contentions were due. In particular, Twilio stepped through each *Georgia-Pacific* factor and identified the information relevant to the analysis under that factor, including citations to specific documents.

Twilio's contentions do not contain a calculation of the apportioned royalty base or the royalty rate. Realizing that it could not provide a reliable computation of damages with the information available at the time its damages contentions were due, Twilio identified the information that it needed from TeleSign in accordance with Local Patent Rule 3-8(b). Twilio identified every *Georgia Pacific* factor that it would likely rely on and then identified the types of information that it needed for each factor. This identification satisfies Local Patent Rule 3-8.

TeleSign reads a requirement into the rules that Twilio must provide a computation of damages regardless of what information was available to it. That interpretation ignores Patent Local Rule 3-8(b). The Local Rules do not mandate a computation, and the Local Rules do not contemplate a mandatory update of damages contentions. The Court should reject TeleSign's attempts to expand the Local Rules. TeleSign can rely on standard discovery techniques such as interrogatories and depositions if it needs more information.

At the time that Twilio provided its damages contentions, it did not have the information necessary to calculate a reliable reasonable royalty under *Georgia Pacific*. And even today, Twilio does not have the necessary information to make a reliable computation. TeleSign continues to withhold documents that Twilio identified with its Rule 3-8(b) identification. The Court recently ordered TeleSign to produce documents responsive to some of those damages categories, but it is likely that further Court intervention will be necessary to address TeleSign's meager document production.

BAKER BOTTS L.L.P.

## II. FACTUAL BACKGROUND

Twilio served its damages contentions on June 20. In accordance with Local Patent Rule 3-8, the contentions disclose that Twilio is seeking (1) monetary relief for past infringement; and (2) injunctive relief, or in the alternative, monetary relief for future infringement. *See* Ex. A (Damages Contentions) at 4-7. Twilio disclosed that the monetary relief (for past damages) it seeks is in the form of a reasonable royalty, with treble damages for willful infringement. *Id.* at 2-7. Twilio stated that it is not seeking damages in the form of lost profits or price erosion. *Id.* at 1. Twilio addressed each *Georgia-Pacific* factor likely relevant to the calculation of a reasonable royalty in detail.

Pursuant to Local Patent Rule 3-8(b), Twilio also identified the information it required for each *Georgia-Pacific* factor. For example, with respect to *Georgia-Pacific* Factor 2, which relates to rates paid by the licensee for use of comparable patents, Twilio identified that it would need information concerning "any licensing or technology transfer / sharing agreements that may have been executed [by TeleSign], services / products received or provided, and any related financial provisions." Ex. A (Damages Contentions) at 8-9. With respect to *Georgia-Pacific* Factor 6, which relates to convoyed sales, Twilio identified several categories of outstanding information concerning TeleSign's non-accused products. *Id.* at 12-13. With respect to *Georgia-Pacific* Factor 8, which relates to the profitability of the products made under the patent, Twilio identified several categories of documents that remained outstanding, including "monthly or quarterly unit price, unit sales, revenue, and unit cost information. . . per customer from 2005 to present for each Accused Product" and financial information that pre-dates TeleSign's switch from SOAP to REST in 2012. *Id.* at 16-19. Twilio explained that since TeleSign released its REST API in 2012, financial information that pre-dates that release would enable Twilio to analyze how the change in (or addition of) the patented technology affected TeleSign and its profitability. *Id.* at 17. Twilio took a similar approach with respect to the other *Georgia-Pacific* factors. *Id.* at 8-15, 17-19, 22-29, 32-41.

Twilio's Opposition to TeleSign's Motion To Compel Amended Damages Contentions
Case: 5:16-cv-06925-LHK-SVK

### III. TWILIO'S DAMAGES CONTENTIONS COMPLY WITH THE LOCAL PATENT RULES

Twilio's damages contentions comply with Local Patent Rule 3-8. In accordance with that rule, Twilio's contentions identify each category of damages it is seeking for TeleSign's infringement, as well as its theories of recovery and factual support for those theories. Twilio identified facts relevant to each *Georgia-Pacific* factor, explained how those facts affect the damages analysis, and identified specific documents that are relevant to each factor. Twilio did not—and could not—provide a precise "computation" of damages because, pursuant to Local Patent Rule 3-8(b), information that Twilio required remained outstanding in the case. Instead, in accordance with the rules, Twilio identified for each *Georgia-Pacific* factor what missing information it required to provide a more detailed analysis.

Twilio's analysis of *Georgia-Pacific* factors 9 and 10, which relate to the utility and advantages of the patents over old modes and devices, provide an illustrative example of the information Twilio provided in its contentions. *See* Ex. A (Damages Contentions) at 19-25. In connection with those two factors, Twilio described the problems and solutions addressed and presented by the patents-in-suit, provided information available to Twilio concerning TeleSign's transition from SOAP to REST, described several benefits of REST over SOAP, identified nearly 100 relevant documents, and identified several categories of outstanding documents that relate to further analysis of those factors. *See id.* at 22-25. For example, Twilio explained that it required financial information that pre-dates TeleSign's switch from SOAP to REST in 2012. *Id.* at 23-24. Twilio explained that since TeleSign released its REST API in 2012, financial information that pre-dates that release would enable Twilio to analyze how the change in (or addition of) the patented technology affected TeleSign and its profitability. *Id.* at 24. Additionally, Twilio stated that information concerning quantities of each Accused Product sold by TeleSign over time would be relevant to its analysis. *Id.* at 24. Quantities sold of the accused products compared to "old modes and devices" directly affects an analysis under *Georgia-Pacific* factors 9 and 10. Twilio took a similar approach with respect to the other thirteen *Georgia-Pacific* factors. *See id.* This approach satisfies Local Patent Rule 3-8; nothing

1 more is required.

### IV. TELESIGN ATTEMPTS TO ENLARGE THE SCOPE OF THE LOCAL PATENT RULES

TeleSign does not dispute that Twilio did not have the required information at the time of its contentions (or even now). Rather, TeleSign attempts to expand the Local Patent Rule to require a computation of damages irrespective of the information in Twilio's possession as of the deadline for its damages contentions. D.I. 121 at 3-5. But that interpretation ignores Local Patent Rule 3-8(b), which specifically allows a party to "identify the information it requires" to the extent it "contends it is unable to provide a fulsome response to the disclosures required by this rule." Twilio did exactly that.

TeleSign also reads a requirement for amendment into the Local Patent Rules without citing any authority for such an obligation. D.I. 121 at 5. The rules do not require or even address amendment of damages contentions. *Compare* Local Patent Rule 3-6 (addressing amendments to infringement and invalidity contentions only). Rather, the rules require the plaintiff to identify its damages contentions as of 50 days following invalidity contentions based on the information available to it at that time. Local Patent Rule 3-8. Twilio did so. TeleSign's interpretation would effectively accelerate the deadline for damages expert reports, which is not contemplated under the rules.

Even if the rules did contemplate mandatory amendments of damages contentions, however, TeleSign still has not produced the outstanding information Twilio identified under Local Patent Rule 3-8(b). And TeleSign is the only entity that possesses much of the missing information, including documents relating to TeleSign's comparable licenses, pricing strategy, pricing information, marketing analyses related to the accused and non-accused products, current and/or past customers of the accused and non-accused products, revenue attributable to the accused and non-accused products, per-unit revenue, cost, and profit information, TeleSign forecasts and projections relating to per-unit revenue, costs, and profits, competitive analyses, and any available and viable non-infringing alternatives. The Court recently ordered TeleSign to produce several categories of documents relating to damages issues. *See* D.I. 135. TeleSign has

1  not yet produced those documents. Other documents still remain outstanding and the parties are
2  in the meet and confer process. It is likely that further Court intervention will be necessary to
3  force TeleSign to produce the remaining damages-related documents.

4      TeleSign's refusal to produce documents relating to its release of a REST API is a prime
5  example of outstanding information that is relevant to Twilio's damages analysis. Despite
6  refusing to produce those documents,[1] TeleSign asks that Twilio identify the "relevance of . . .
7  apportionment for unpatented technology such as SOAP." D.I. 121 at 5. However, documents
8  concerning TeleSign's decision to release a REST product are directly relevant to several
9  *Georgia-Pacific* factors, and it would be difficult for Twilio to provide a precise computation of
10 damages until it can evaluate these documents and others. For example, Twilio expects that
11 TeleSign has documents relating to customer demand for a REST API, documents relating to
12 TeleSign's decision to invest in and upgrade to a REST API, and documents relating to
13 TeleSign's costs in developing and upgrading to a REST API. Documents comparing the
14 profitability of TeleSign's SOAP-based products to its REST-based products are particularly
15 important, especially given that TeleSign contends that its SOAP alternative "was likely
16 available at little to no expense." Ex. B (TeleSign's Responsive Damages Contentions) at 18.
17 Twilio was not able to fully address customer demand for the infringing technology, profitability
18 of the accused technology, or the viability of any potential non-infringing alternatives—all of
19 which are required by a *Georgia-Pacific* analysis—without the Court-ordered documents from
20 TeleSign that still remain outstanding.

## V. CONCLUSION

Twilio's contentions comply with the Local Patent Rules. Twilio was unable to provide a computation of the reasonable royalty, and it identified what information it required in order to do so pursuant to Local Patent Rule 3-8(b). TeleSign reads a requirement for amendment into the rules, yet it has not produced the information that Twilio identified as outstanding to date.

---

[1] The Court recently ordered TeleSign to produce documents relating to the addition of its REST API interface. D.I. 135 at 1.

1 | Twilio respectfully requests the Court deny TeleSign's motion to compel.

3 | Dated: October 16, 2017                Respectfully submitted,

BAKER BOTTS L.L.P.
WAYNE STACY
SARAH GUSKE
MICHELLE J. EBER
J.B. SCHILLER

*/s/ Wayne O. Stacy*
Wayne O. Stacy

*Attorney for Twilio Inc.*

BAKER BOTTS L.L.P.

---

Twilio's Opposition to TeleSign's Motion To Compel Amended Damages Contentions
Case: 5:16-cv-06925-LHK-SVK

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on October 16, 2017.

*/s/ Michelle J. Eber*
Michelle J. Eber